UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

NANCY AKBARI-SHAHMIRZADI,

    Debtor.

Case No. 7-11-15351 TL

ESTATE OF ELEANOR JACOBY,
CHARLOTTE NEFF, Executor,

    Plaintiff,

v.

Adversary No. 12-1021 T

NANCY AKBARI-SHAHMIRZADI,

    Defendant.

## MEMORANDUM OPINION

In this adversary proceeding Plaintiff seeks to have Defendant's debt declared nondischargeable under, inter alia, 11 U.S.C. § 523(a)(4). Plaintiff's motion for partial summary judgment includes 34 asserted facts and supporting evidence, none of which Defendant addressed in her response. As permitted by the rules of civil procedure, and for the reasons set forth below, the Court elects to consider the facts undisputed, and concludes that the facts provide a sufficient evidentiary basis for judgment in Plaintiff's favor on the liability portion of its § 523(a)(4) claim.

### I.    SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. Fed.R.Civ.P. 56.[1] "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). *See also Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir.1993) ("[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."); *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980) (once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried); *Lazaron v. Lucas (In re Lucas)*, 386 B.R. 332, 335 (Bankr. D.N.M. 2008) (same).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus,* 11 F.3d at 1539.

---

[1] Fed.R.Civ.P. 56 applies in adversary proceedings. *See* Bankruptcy Rule 7056.

Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## II.     FACTS

The Court finds that the following facts, taken from Plaintiff's Motion for Partial Summary Judgment, doc. 17 (the "Motion") and supporting documents, are undisputed:[2]

1. Defendant is the daughter of the late Eleanor Jacoby ("Jacoby").

2. On or about October 22, 2007, Jacoby executed a will and revoked all prior wills and codicils.

3. On or about May 2, 2008, Jacoby executed a codicil to her will in which she reduced the bequest to Defendant from $350,000 to $100,000, and reduced the bequest to her son John Jacoby from $450,000 to $200,000.

4. In May, 2008, while Defendant was visiting Jacoby at her apartment, Jacoby showed Defendant a copy of the codicil.

5. Defendant testified in a deposition given in this adversary proceeding that she had not seen her mother for about 40 years before the May, 2008 visit.

6. Jacoby died on June 11, 2010, a resident of Queens County, New York.

---

[2] See the discussion in Section III(A) below.

7. On July 28, 2010, Defendant filed a Petition for Letters of Administration in the Surrogate's Court of Queens County, New York (the "Surrogate's Court"), seeking appointment as administrator of Jacoby's estate (the "Estate").

8. In the petition, Defendant stated that Jacoby died intestate.

9. On August 11, 2010, the Surrogate's Court appointed Defendant the administrator of the Estate and issued Letters of Administration to Defendant.

10. Defendant transferred all funds in Jacoby's name to the Estate.

11. On August 20 and 21, 2010, Defendant, acting as administrator of the Estate, distributed over $4 million to herself and John Jacoby.

12. On October 8, 2010, Plaintiff filed a Petition for Probate and Letters Testamentary in the Surrogate's Court.

13. On October 26, 2010, the Surrogate's Court entered an Order to Show Cause which, inter alia:

    a. Temporarily suspended Defendant's Letters of Administration;

    b. Temporarily restrained Defendant from performing any duties as the Estate administrator;

    c. Temporarily restrained Defendant from transferring Estate assets; and

    d. Set a hearing on pending matters for November 10, 2010.

14. On October 29, 2010, Defendant transferred $250,000 of funds received from the Estate to Carlos Estrada-Vega.

15. On November 1, 2010, Defendant transferred $127,820 of funds received from the Estate to Ardeshir Karimi, and $250,000 of funds received from the Estate to Al Dokhad General Trading LLC.

16. Defendant did not appear at the November 10, 2010 hearing on the Order to Show Cause.

17. On November 10, 2010, John Jacoby, acting through counsel, agreed to return at least $1,851,500 of the Estate funds Defendant distributed to him.

18. On November 12, 2010, the Surrogate's Court entered a Supplemental Order:

    a. Revoking Defendant's Letters of Administration;

    b. Ordering Defendant to turn over all Estate books, records, and assets within 15 days; and

    c. Ordering Defendant to file an accounting within 30 days.

19. On December 3, 2010, the Surrogate's Court awarded Plaintiff a money judgment against Defendant in the amount of $3,623,729.00, plus interest of 9.0% per year from August 20, 2010 (the "Judgment").

20. On June 15, 2011, Plaintiff and Defendant entered into a Stipulation in which Defendant agreed, inter alia:

    a. That she willfully transferred Estate assets to herself and others;

    b. To withdraw her objections to Jacoby's last will and testament and codicil;

    c. To make the following payments to the Estate:

        i.        $650,000 immediately;

        ii.        $296,173.10 by July 6, 2011;

        iii.        $200,000 by July 25, 2011; and

        iv.        $666,936.50 by October 31, 2011.

    d.    That in the event of a default in any of the agreed-upon payments, Defendant would owe the full amount of the Judgment, including all accrued interest, less any payments received; and

    e.    To turn over to Plaintiff all personal property of the Estate.

21.    Defendant was represented by counsel when she signed the Stipulation. Defendant's counsel also signed the Stipulation, and the Stipulation was read into the Surrogate's Court record and acknowledged by Defendant in open court.

22.    Defendant did not make the $666,936.50 payment due October 31, 2011.

23.    On November 10, 2011, the Surrogate's Court entered a decree holding Defendant in contempt of Court for failure to comply with the Stipulation.

24.    On or about December 1, 2011, Defendant moved the Surrogate's Court for a stay of enforcement of the Stipulation.

25.    Defendant filed this bankruptcy case December 14, 2011.

26.    At all relevant times, Defendant was an attorney, licensed in the State of Pennsylvania. She had practiced law for approximately thirty years.

### III.    DISCUSSION

A.    <u>Defendant Did Not Address the Facts Set Out in the Motion, So The Court May Consider Them Undisputed</u>.

Fed.R.Civ.P. 56(c)(1) provides:

> *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular part of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited to not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

In her Response to the Motion, doc. 19 (the "Response"), Defendant objected to the Motion but did not specifically address any asserted fact, nor provide evidence in support of her position. Fed.R.Civ.P. 56(e) provides:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Based on Defendant's failure to address, or even attempt to address, the facts in the Motion, as well as the apparent reliability and accuracy of the facts, the Court has elected to consider the facts undisputed and admitted to the extent set forth above. *See also* NM LBR 7056-1(c).[3]

---

[3] "A memorandum in opposition to the motion shall contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the movant's fact that is disputed. All material facts set forth in movant's statement that are properly supported shall be deemed admitted unless specifically controverted."

B. <u>The Elements of §523(a)(4)</u>. A debt arising from defalcation while acting in a fiduciary capacity is non-dischargeable. 11 U.S.C. § 523(a)(4). To prevail under the defalcation/fiduciary capacity portion of § 523(a)(4), a creditor must demonstrate 1) the existence of a fiduciary relationship between the debtor-defendant and the creditor; and 2) a defalcation committed by the debtor-defendant during the course of the fiduciary relationship. *In re Kalinowski,* 449 B.R. 797, 806 (Bankr. D.N.M. 2011), affirmed, 482 B.R. 334 (10th Cir. BAP 2012), citing *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996).

1. <u>Fiduciary Relationship</u>. A § 523(a)(4) non-dischargeability claim based on alleged defalcation requires as a threshold matter "the existence of a fiduciary relationship between the debtor and the objecting party." *Antlers Roof-Truss and Builders Supply v. Storie (In Re Storie)*, 216 B.R. 283, 286 (10th Cir. BAP 1997).[4] The existence of such a fiduciary relationship is determined by federal law. *Fowler Bros. v. Young,* 91 F.3d at 1371; *Sawaged v. Sawaged (In re Sawaged)*, 2011 WL 880464 *3 (10th Cir. BAP 2011).

Under Tenth Circuit law, a fiduciary relationship exists only where a debtor has been entrusted with money pursuant to "an express or technical trust." *Sawaged*, at *3, citing *Fowler Bros.* and *Allen v. Romero (In re Romero)*, 535 F.2d 618, 621 (10th Cir. 1976).

---

[4] *See generally The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In Re Hayes)*, 183 F.3d 162, 167 (2nd Cir. 1999) ("While the Code does not clarify the meaning of the term 'fiduciary capacity' as used in Section 523(a)(4), counterparts of this provision have existed at least since Section 1 of the Bankruptcy Act of 1841, which excepted from discharge 'debts . . . created in consequences of a defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity.'").

Express trusts are intentionally entered into by the parties, and involve a formal declaration of trust or a situation where the intention of the parties to form a trust relationship is inferable from surrounding facts and circumstances. *Sawaged*, at *3, citing *Hore's v. Steele (In re Steele)*, 292 B.R. 422, 427 (Bankr. D. Colo. 2003).

A technical trust is imposed by statute or other law. *Duty v. White (In re White)*, 271 B.R. 213, at *4 (10th Cir. BAP 2001) (unpublished), citing *In re Romero*, 535 F.2d at 621-22; *Sawaged*, at *3 (a technical trust may be determined to exist by virtue of a statutorily imposed duty). For a state statute to create a technical trust, the statute must define the trust res, establish trustee duties, and impose the trust before any wrongdoing. *Sawaged, at *3*.

While the meaning of "fiduciary capacity" under § 523(a)(4) is a matter of federal law, bankruptcy courts rely on the relevant state law to determine if there is a trust relationship. *In re Kalinowski,* 449 B.R. at 806 (state law dictates whether a trust relationship exists); *In re White*, 271 B.R. 213, at *4 (same). *See also Wachtel v. Rich (In re Rich)*, 353 B.R. 796, 805-806 (Bankr. S.D.N.Y. 2006) (a debtor will only be considered a §523(a)(4) fiduciary if he owes the fiduciary obligations under applicable state law).

Under New York law, which applies here, an administrator of a decedent's estate holds estate funds in a technical trust, and thus is a fiduciary. N.Y. Est. Powers & Trusts Law, §11-1.1(a) (McKinney 1992). *See also Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1174-1175 (C.D. Cal. 2008) (under New York law, an administrator of a decedent's estate is a fiduciary of the estate's

-9-

beneficiaries); *United States v. Coppola*, 1994 WL 665751, at *6 (E.D.N.Y. 1994), affirmed, 85 F.3d 1015 (2d Cir. 1996), citing *In re Estate of Runals*, 68 Misc.2d 967, 973, 328 N.Y.S.2d 966, 973 (Sur. Ct. 1972). In this regard, New York law is consistent with strong and uniform case law that an executor, administrator, or representative of a decedent's estate is a fiduciary for § 523(a)(4) purposes. *In re Karch,* 2012 WL 5947866, at *2 (Bankr. D. Colo. 2012); *Utz and McIntyre v. Frock (In Re Frock)*, 2011 WL 1436358 at *4 (Bankr. D. Md. 2011) (collecting cases); *In re Tomlin*, 266 B.R. 350, 354 (N.D. Tex 2001) (executor of a probate estate subject to high fiduciary standards).

        2.    <u>Defalcation</u>. There are two principal Tenth Circuit cases that define defalcation under § 523(a)(4). In *Storie*, 216 B.R. at 286, the Tenth Circuit Bankruptcy Appellate Panel reviewed the existing case law from the other circuits and held:

> We conclude that "defalcation" under section 523(a)(4) is a fiduciary-debtor's failure to account for funds that have been entrusted to it due to any breach of a fiduciary duty, whether intentional, willful, reckless, or negligent. Furthermore, the fiduciary-debtor is charged with knowledge of the law and its duties. Once a creditor objecting to the dischargeability of a debt under section 523(a)(4) has met its burden of showing that the debtor is a fiduciary and that its debt has arisen because the debtor-fiduciary has not paid the creditor funds entrusted to it, *Young*, 91 F.3d at 1371, the burden then shifts to the debtor-fiduciary to render an accounting to show that it complied with its fiduciary duties. *Niles*, 106 F.3d at 1461-62; *Cappella v. Little (In re Little)*, 163 B.R. 497 (Bankr. E.D. Mich. 1994).

The second case is *In re Millikan*, 188 Fed. Appx. 699 (10th Cir. 2006) (unpublished), in which the Tenth Circuit concluded that defalcation means "a failure to meet an obligation; a non-fraudulent default,"[5] that is accompanied by at least, "some

---

[5] Id., at ** 2-3, quoting *Black's Law Dictionary*'s definition of defalcation.

-10-

portion of misconduct." Id., at ** 2-3, quoting *Cent. Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir. 1937).

  C. <u>Plaintiff Has Established the Liability Portion of its § 523(a)(4) Nondischargeability Claim</u>.

    1. <u>Collateral Estoppel</u>.

Plaintiff asks the Court to give preclusive effect to the Judgment and/or other judgments and orders entered by the Surrogate's Court.[6] The Court has considered the request, but declines to do so, for three reasons. First, as set forth below, there is no need to invoke collateral estoppel principles to grant the Motion. Second, the Judgment did not address the exact issues before the Court (i.e. the fiduciary nature of the relationship, and whether the loss was caused by defalcation). Third, the Judgment appears to be a default judgment,[7] and under New York[8] law, default judgments are not given preclusive effect.[9]

---

[6] A judgment entered against a defendant in state court can be given preclusive effect in a subsequent adversary proceeding against the same defendant for determination of non-dischargeability of debt, provided all the elements necessary to the determination of non-dischargeability were established in the state court judgment, and provided that all requirements for collateral estoppel have been satisfied. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11 (1991). *See also Klemens v. Wallace (In re Wallace),* 840 F.2d 762, 764 (10th Cir. 1988) ("the doctrine of collateral estoppel may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability").

[7] The Court cannot tell from reading the transcript of judgment (the only evidence of the Judgment Plaintiff provided) whether Defendant participated in the trial that resulted in the Judgment. Given the lack of evidence on this point, the Court will assume that Defendant did not participate.

[8] When applying principles of collateral estoppel based on a judgment entered in state court, the bankruptcy court must look to the applicable requirements of the state in which the judgment was entered. *Gonzales v. Hernandez,* 175 F.3d 1202, 1204 (10th Cir. 1999) ("A federal court is required to give a state court judgment the same preclusive effect it would be given under the laws of the state in which it was rendered.").

[9] *Bedford Medical Care v. Encompass*, 31 Misc. 3d 222, 915 N.Y.S.2d 452 (Civ. Ct, City of New York 2011), citing *Zimmerman v. Tower Insurance Co.*, 13 A.D.3d 137, 788 N.Y.S.2d 309

-11-

2. The Undisputed Facts.

Even without collateral estoppel, a judgment on liability in Plaintiff's favor is appropriate. The undisputed facts show that between August 11, 2010 and at least October 26, 2010, Defendant was the personal administrator of the Estate, holding about $4,000,000 in trust. Under New York and other law, such a personal administrator has strong fiduciary duties to the Estate and beneficiaries. The Court has no trouble finding and/or concluding that the "fiduciary capacity" element of § 523(a)(4) has been satisfied.

The undisputed facts also show plainly that Plaintiff's claim against Defendant arose during the time Defendant had fiduciary duties to the Estate and heirs, since the payments in question occurred on or about August 21, 2010.

Finally, the undisputed facts show that the payments, together with the Defendant's failure to return all of the funds as agreed in the Stipulation, constituted a defalcation under the *Storie* standards, or at a minimum shifted the burden to Defendant to render an accounting showing compliance with her fiduciary duties. *Storie*, 216 B.R. at 288, citing *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1461-61 (9th Cir. 1997) and *Cappella v. Little (In re Little)*, 163 B.R. 497 (Bankr. E.D. Mich. 1994). Defendant did not attempt to give the required accounting.[10]

The result is the same if the *Millikan* standards are applied, since Defendant unquestionably has failed to meet an obligation, and her (i) misrepresentation to the Surrogate's Court that Jacoby died intestate, and (ii) failure to obtain Surrogate's Court

---

(2004), and *Magic Recovery Medical & Surgical Supply Inc. v. State Farm Mutual Auto Ins. Co.*, 27 Misc.3d 67, 901 N.Y.S.2d 774 [App. Term, 2d Dept. 2008].

[10] Given Defendant's admission that she "willfully transferred assets of the Estate of Eleanor Jacoby to herself and others," Stipulation, ¶1, it appears that any justification would be difficult.

-12-

approval before distributing the $4,000,000 to herself and her brother, constituted at least "some portion of misconduct." *Millikan*, 188 Fed. Appx. 699, at **2-3.

The Court concludes that Plaintiff's claim against Defendant arose from defalcation.

D. <u>Defendant's Affirmative Defenses</u>. Defendant's answer to Plaintiff's complaint asserts a number of affirmative defenses. In light of the § 523(a)(4) law set out above, including the shifting of the burden of proof once Plaintiff established the existence of a fiduciary duty and a loss of funds entrusted to Defendant, Defendant may not rely on the unsupported affirmative defenses to prevent summary judgment. Given the facts in the Motion, Defendant was required to submit evidence in opposition to avoid judgment. No such evidence was submitted.

Furthermore, none of the allegations in the affirmative defenses, even if true, would show that Defendant complied with her fiduciary duties. For example, even if Defendant believed her mother had revoked her last will and testament, Defendant's duties as a fiduciary would have required her to investigate the issue, notify all potential heirs, and obtain instructions from the Surrogate's Court before making distributions. Her failure to take these steps was a significant breach of duty. Similarly, even if Defendant had thought her mother lacked the capacity to sign a valid will, the issue clearly should have been brought before the Surrogate's Court for a ruling, after notice to all interested parties. Defendant, who had a huge financial interest in the outcome of this issue, should not have taken it upon herself to treat Jacoby's will as void. Finally,

Defendant's unsupported allegation that she signed the Stipulation under duress is not enough to prevent summary judgment, given the undisputed facts Plaintiff provided.

  E. <u>The Nondischargeable Amount</u>.  It is not clear from the Motion and supporting documents how much Defendant owes Plaintiff, so the Court will hold a hearing on that issue, and then will enter a supplemental judgment clarifying this point.

IV. <u>CONCLUSION</u>

  The Court will grant the Motion with respect to liability and hold a hearing on the amount of Plaintiff's claim that should be declared nondischargeable.  This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052.   A separate judgment will be entered.

_____
Hon. David T. Thuma,
United States Bankruptcy Judge

Entered on the docket: January 18, 2013.

Copy to:

Bonnie Gandarilla
P.O. Box 7459
Albuquerque, NM 87194

Steve H. Mazer
2501 Yale Blvd, SE, #204
Albuquerque, NM 87106