UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

NANCY AKBARI-SHAHMIRZADI,

    Case No. 7-11-15351 TL

  Debtor.

ESTATE OF ELEANOR JACOBY,
CHARLOTTE NEFF, Executor,

  Plaintiff,

v.     Adversary No. 12-1021 T

NANCY AKBARI-SHAHMIRZADI,

  Defendant.

## MEMORANDUM OPINION

In this adversary proceeding Plaintiff seeks to have Defendant's debt declared nondischargeable under, inter alia, 11 U.S.C. § 523(a)(4). The Court originally ruled in Plaintiff's favor on her motion for partial summary judgment, filed November 29, 2012 (the "Motion"), based on defendant's failure to file an adequate response. The Court then granted Defendant's motion to reconsider, which the Court treated essentially as a request to set aside a default judgment. The matter has now been fully briefed. The Court concludes that Defendant's affidavits submitted in support of her position raise genuine fact issues about her state of mind when she took the actions complained of. The Court therefore will deny the Motion.

### I.    SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.[1]  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment.  *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).  *See also Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir.1993) ("[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."); *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980) (once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried); *Lazaron v. Lucas (In re Lucas)*, 386 B.R. 332, 335 (Bankr. D.N.M. 2008) (same).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  A

---

[1] Fed.R.Civ.P. 56 applies in adversary proceedings.  *See* Bankruptcy Rule 7056.

mere "scintilla" of evidence will not avoid summary judgment. *Vitkus,* 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson,* 477 U.S. at 249. Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## II.    FACTS

The Court finds, for the purposes of the Motion only[2] that the following facts are undisputed:

1. Defendant is the daughter of the late Eleanor Jacoby.

2. On or about October 22, 2007, Ms. Jacoby executed a will and revoked all prior wills and codicils.

3. On or about May 2, 2008, Ms. Jacoby executed a codicil to her will in which she reduced the bequest to Defendant from $350,000 to $100,000, and reduced the bequest to her son John E. Jacoby, M.D. from $450,000 to $200,000.

4. In May, 2008, while Defendant was visiting her mother at her apartment, Ms. Jacoby showed Defendant a copy of the codicil.

---

[2] The Court elects not to "enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." Fed.R.Civ.P. 56(g). Thus, at trial the parties will be required to prove all facts supporting their positions, without reference to this Memorandum Opinion.

-3-

5. Defendant had not seen her mother for many years before the May, 2008 visit.

6. Defendant began visiting Ms. Jacoby regularly over extended weekends and sleeping over at her mother's condominium during the remainder of her mother's life. She and her mother had lunch together, visited with family and friends, shopped, attended movies, and attended Synagogue together. During this time, Defendant's mother behaved like a "doting mother."

7. During this time, Ms. Jacoby never expressed the negative opinions that appear in the codicil, but rather expressed her opinion that she resented her treatment by her former attorney Gerard J. Sweeney, accusing him of overcharging, overruling her true wishes, intimidating her, and forcing her to execute document she did not understand with explanations she did not understand.

8. Her mother told Defendant that she had terminated the services of Mr. Sweeney and his firm, had taken back all her original documents, and was keeping the will and codicils in her closet.

9. Ms. Jacoby died on June 11, 2010, a resident of Queens County, New York.

10. After her death, Defendant and her brother John Jacoby both searched their mother's condominium, looking for a will. They did not find a will.

11. After her death, Defendant and Dr. Jacoby met with a well-known estate and probate attorney, Madeleine Egelfeld, to get advice on what actions to take.

12. On Ms. Egelfeld's advice, Defendant searched the records of the Registry of Wills for Queens County, New York, and found no will.

-4-

13. Defendant and her brother knew their mother was extremely private about her papers and finances and would not leave a will with any relative.

14. Mr. Jacoby was aware that his mother had closed her safety deposit box.

15. Defendant concluded that her mother had destroyed or otherwise disposed of her last will and testament without replacing it, and therefore had died intestate.

16. Defendant's father had died intestate.

17. On July 28, 2010, Defendant filed a Petition for Letters of Administration in the Surrogate's Court of Queens County, New York (the "Surrogate's Court"), seeking appointment as administrator of her mother's estate (the "Estate").

18. In the petition, Defendant stated that Jacoby died intestate.

19. On August 11, 2010, the Surrogate's Court appointed Defendant the administrator of the Estate and issued Letters of Administration to Defendant.

20. Defendant transferred all funds in Ms. Jacoby's name to the Estate.

21. Ms. Egelfeld advised Defendant and Dr. Jacoby that it was customary, but not required, to wait seven months before distributing funds in a probate estate.

22. Defendant and Dr. Jacoby concluded that they were the only heirs, that there were no creditors, and that the only estate assets were the condominium and cash. They therefore decided to distribute the cash (apart from the $1,000,000 held in reserve) to themselves without waiting the customary seven months. The total distribution was about $4,000,000.

23. The distributions were made on or about August 21. 2010.

24. On October 8, 2010, Plaintiff filed a Petition for Probate and Letters Testamentary in the Surrogate's Court.

-5-

Case 12-01021-t    Doc 64    Filed 07/01/13    Entered 07/01/13 09:30:49 Page 5 of 12

25. On October 26, 2010, the Surrogate's Court entered an Order to Show Cause which, inter alia:

    a. Temporarily suspended Defendant's Letters of Administration;

    b. Temporarily restrained Defendant from performing any duties as the Estate administrator;

    c. Temporarily restrained Defendant from transferring Estate assets; and

    d. Set a hearing on pending matters for November 10, 2010.

26. Defendant did not appear in person at the November 10, 2010 hearing on the Order to Show Cause. However, Defendant attempted to appear through counsel, Stuart Bochner, but the court did not allow Mr. Bochner to enter his appearance.

27. On November 10, 2010, John Jacoby, acting through counsel, agreed to return at least $1,851,500 of the Estate funds Defendant distributed to him.

28. On November 12, 2010, the Surrogate's Court entered a Supplemental Order:

    a. Revoking Defendant's Letters of Administration;

    b. Ordering Defendant to turn over all Estate books, records, and assets within 15 days; and

    c. Ordering Defendant to file an accounting within 30 days.

29. On December 3, 2010, the Surrogate's Court awarded Plaintiff a money judgment against Defendant in the amount of $3,623,729.00, plus interest of 9.0% per year from August 20, 2010 (the "Judgment").

-6-

Case 12-01021-t    Doc 64    Filed 07/01/13    Entered 07/01/13 09:30:49 Page 6 of 12

30. On June 15, 2011, Plaintiff and Defendant entered into a Stipulation in which Defendant agreed, inter alia:

    a. That she willfully transferred Estate assets to herself and others;

    b. To withdraw her objections to Ms. Jacoby's last will and testament and codicil;

    c. To make the following payments to the Estate:

        i. $650,000 immediately;

        ii. $296,173.10 by July 6, 2011;

        iii. $200,000 by July 25, 2011; and

        iv. $666,936.50 by October 31, 2011;

    d. That in the event of a default in any of the agreed-upon payments, Defendant would owe the full amount of the Judgment, including all accrued interest, less any payments received; and

    e. To turn over to Plaintiff all personal property of the Estate.

31. Defendant was represented by counsel when she signed the Stipulation. Defendant's counsel also signed the Stipulation, and the Stipulation was read into the Surrogate's Court record and acknowledged by Defendant in open court.

32. Defendant did not make the $666,936.50 payment due October 31, 2011.

33. On November 10, 2011, the Surrogate's Court entered a decree holding Defendant in contempt of Court for failure to comply with the Stipulation.

34. On or about December 1, 2011, Defendant moved the Surrogate's Court for a stay of enforcement of the Stipulation.

35. Defendant filed this bankruptcy case December 14, 2011.

-7-

III. DISCUSSION

A. The Elements of §523(a)(4). A debt arising from defalcation while acting in a fiduciary capacity is non-dischargeable. 11 U.S.C. § 523(a)(4). To prevail under the defalcation/fiduciary capacity portion of § 523(a)(4), a creditor must demonstrate 1) the existence of a fiduciary relationship between the debtor-defendant and the creditor; and 2) a defalcation committed by the debtor-defendant during the course of the fiduciary relationship. *In re Kalinowski,* 449 B.R. 797, 806 (Bankr. D.N.M. 2011), *affirmed*, 482 B.R. 334 (10th Cir. BAP 2012), citing *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996).

1. Fiduciary Relationship. A § 523(a)(4) non-dischargeability claim based on alleged defalcation requires as a threshold matter "the existence of a fiduciary relationship between the debtor and the objecting party." *Antlers Roof-Truss and Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 286 (10th Cir. BAP 1997).[3] The existence of such a fiduciary relationship is determined by federal law. *Fowler Bros. v. Young,* 91 F.3d at 1371; *Sawaged v. Sawaged (In re Sawaged)*, 2011 WL 880464 *3 (10th Cir. BAP 2011).

Under Tenth Circuit law, a fiduciary relationship exists only where a debtor has been entrusted with money pursuant to "an express or technical trust." *Sawaged*, at *3, citing *Fowler Bros.* and *Allen v. Romero (In re Romero)*, 535 F.2d 618, 621 (10th Cir. 1976).

---

[3] *See generally The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In Re Hayes)*, 183 F.3d 162, 167 (2nd Cir. 1999) ("While the Code does not clarify the meaning of the term 'fiduciary capacity' as used in Section 523(a)(4), counterparts of this provision have existed at least since Section 1 of the Bankruptcy Act of 1841, which excepted from discharge 'debts . . . created in consequences of a defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity.'").

-8-

Express trusts are intentionally entered into by the parties, and involve a formal declaration of trust or a situation where the intention of the parties to form a trust relationship is inferable from surrounding facts and circumstances. *Sawaged*, at *3, citing *Hore's v. Steele (In re Steele)*, 292 B.R. 422, 427 (Bankr. D. Colo. 2003).

A technical trust is imposed by statute or other law. *Duty v. White (In re White)*, 271 B.R. 213, at *4 (10th Cir. BAP 2001) (unpublished), citing *In re Romero*, 535 F.2d at 621-22; *Sawaged*, at *3 (a technical trust may be determined to exist by virtue of a statutorily imposed duty). For a state statute to create a technical trust, the statute must define the trust res, establish trustee duties, and impose the trust before any wrongdoing. *Sawaged, at *3*.

While the meaning of "fiduciary capacity" under § 523(a)(4) is a matter of federal law, bankruptcy courts rely on the relevant state law to determine if there is a trust relationship. *In re Kalinowski,* 449 B.R. at 806 (state law dictates whether a trust relationship exists); *In re White*, 271 B.R. 213, at *4 (same). *See also Wachtel v. Rich (In re Rich)*, 353 B.R. 796, 805-806 (Bankr. S.D.N.Y. 2006) (a debtor will only be considered a §523(a)(4) fiduciary if he owes the fiduciary obligations under applicable state law).

Under New York law, which applies here, an administrator of a decedent's estate holds estate funds in a technical trust, and thus is a fiduciary. N.Y. Est. Powers & Trusts Law, §11-1.1(a) (McKinney 1992). *See also Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1174-1175 (C.D. Cal. 2008), *affirmed*, 692 F.3d 983 (9th Cir. 2012) (under New York law, an administrator of a decedent's estate is a fiduciary of the estate's beneficiaries); *United States v. Coppola*, 1994 WL 665751, at *6

-9-

(E.D.N.Y. 1994), *affirmed*, 85 F.3d 1015 (2d Cir. 1996), citing *In re Estate of Runals*, 68 Misc. 2d 967, 973, 328 N.Y.S.2d 966, 973 (Sur. Ct. 1972). In this regard, New York law is consistent with strong and uniform case law that an executor, administrator, or representative of a decedent's estate is a fiduciary for § 523(a)(4) purposes. *In re Karch,* 2012 WL 5947866, at *2 (Bankr. D. Colo. 2012); *Utz and McIntyre v. Frock (In Re Frock)*, 2011 WL 1436358 at *4 (Bankr. D. Md. 2011) (collecting cases); *In re Tomlin*, 266 B.R. 350, 354 (N.D. Tex 2001) (executor of a probate estate subject to high fiduciary standards).

        2.    <u>Defalcation</u>. During the pendency of this adversary proceeding, the United States Supreme Court decided *Bullock v. BankChampaign, N.A.,* 133 S. Ct. 1754 (2013). In *Bullock,* the Supreme Court stated:

> Section 523(a)(4) of the Federal Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). We here consider the scope of the term "defalcation." We hold that it includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.

133 S. Ct. at 1757. *Bullock's* scienter requirement is more stringent than the 10th Circuit law in effect when *Bullock* was handed down. In *In re Millikan*, 188 Fed. Appx. 699 (10th Cir. 2006) (unpublished), the Tenth Circuit concluded that defalcation means "a failure to meet an obligation; a non-fraudulent default,"[4] that is accompanied by at least, "some portion of misconduct." Id., at 701-02, quoting *Cent. Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir. 1937). *Millikan's* "some portion of misconduct"

---

[4] Id., at ** 2-3, quoting *Black's Law Dictionary*'s definition of defalcation.

-10-

standard has now been replaced by *Bullock's* "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." 133 S. Ct. at 1757.

To prevail on the Motion, Plaintiff must show that Defendant either knew her conduct in distributing the estate funds was improper, or else that she was grossly negligent in taking the actions she did. The Court finds that, under the new *Bullock* standard and based on the facts in the current record, there are material disputed facts about Defendant's state of mind. These material disputed facts require that the Motion be denied.

C. Collateral Estoppel.

As discussed in the Court's prior opinion, the Judgment did not address whether the amounts Defendant owes Plaintiff arose because of Defendant's defalcation. Further, the Judgment makes no finding about Defendant's state of mind. In addition, the Judgment appears to be a default judgment,[5] and under New York[6] law, default judgments are not given preclusive effect.[7] For these reasons, the Judgment is not entitled to preclusive effect on any dispute fact issue discussed above.

IV. CONCLUSION

---

[5] The Court cannot tell from reading the transcript of judgment (the only evidence of the Judgment Plaintiff provided) whether Defendant participated in the trial that resulted in the Judgment. Given the lack of evidence on this point, the Court will assume that Defendant did not participate.

[6] When applying principles of collateral estoppel based on a judgment entered in state court, the bankruptcy court must look to the applicable requirements of the state in which the judgment was entered. *Gonzales v. Hernandez,* 175 F.3d 1202, 1204 (10th Cir. 1999) ("A federal court is required to give a state court judgment the same preclusive effect it would be given under the laws of the state in which it was rendered.").

[7] *Bedford Medical Care v. Encompass*, 31 Misc. 3d 222, 915 N.Y.S.2d 452 (Civ. Ct., City of New York 2011), citing *Zimmerman v. Tower Insurance Co.*, 13 A.D.3d 137, 788 N.Y.S.2d 309 (2004), and *Magic Recovery Medical & Surgical Supply Inc. v. State Farm Mutual Auto Ins. Co.*, 27 Misc. 3d 67, 901 N.Y.S.2d 774 [App. Term, 2d Dept. 2008].

-11-

Because of *Bullock's* heightened scienter requirement for defalcation and the evidence Defendant has now submitted, the Court finds that there are disputed fact issues about Defendant's state of mind when the allegedly wrongful conduct took place. The Court therefore will deny the Motion. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052. A separate order will be entered.

Hon. David T. Thuma,
United States Bankruptcy Judge

Entered on the docket: July 1, 2013.

Copy to:

Bonnie Gandarilla
P.O. Box 7459
Albuquerque, NM 87194

Steve H. Mazer
2501 Yale Blvd, SE, #204
Albuquerque, NM 87106

Ronald Holmes
112 Edith Blvd, NE
Albuquerque, NM 87102

Steven Tal Young
20 First Plaza Center NW
Suite 500
Albuquerque, NM 87102